Marjorie Jung and Bernard J. Jung, as Administrator of the Estate of Janet Jung, Deceased, Plaintiffs-Appellees, v. Arthur Buelens, et al., Defendants, Diane Schafer, Defendant-Appellant.

Gen. No. 66–17.

Second District.

December 29, 1966.

Allen & Herrmann, of Woodstock, and Jerome H. Torshen, of Chicago, for appellant.

Carroll, Leali & Gitlin, of Woodstock, for appellees.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

On April 14, 1963, defendant Diane Schafer, while driving her mother's automobile, picked up her friends

392

Marjorie Jung and Janet Jung at their home in McHenry for an automobile ride.

A second automobile was operated by Arthur Buelens with his friends, Ronald and Louis Wolff, as passengers.

The two automobiles drove through downtown McHenry and then proceeded south on Route 31. While driving on the highway, the Schafer automobile overtook the Buelens' car and later the Buelens' car again overtook the Schafer car containing the three girls. While proceeding south on Route 31, Buelens attempted to pass a station wagon ahead of him but he observed a Rambler automobile proceeding towards him in the northbound lane and he thereupon pulled back into his own lane.

Miss Schafer testified that when Buelens got in front of her she let up on the accelerator and when Buelens' brake lights went on she swerved into the northbound lane of traffic to avoid his automobile.

On the other hand, Buelens testified that when he cut back in he felt a "jilt" in the rear end of his car and the Schafer car then passed him and cut in front of him sliding sideways. The car went partially off the road to the right and then crossed the southbound lane into the northbound lane and a collision between the Schafer automobile and the northbound Rambler occurred. Marjorie Jung was injured in the collision and her sister, Janet, was killed.

Suit was started by Majorie Jung and by the Administrator of the Estate of Janet Jung, deceased. A jury trial resulted in a verdict against defendant Diane Schafer and in favor of Marjorie Jung for $1,250 and in favor of the Administrator in the death case for $30,000.

After denial of the post-trial motion, defendant Diane Schafer appeals charging that the evidence fails to show freedom from contributory wilful and wanton misconduct; that the trial court erred in failing to instruct the jury that recovery under the Injuries Act (c 70, §§ 1 and 2, Ill Rev Stats, 1961) was limited to $30,000 and that

the judgment in the death case was excessive and not based on the evidence.

The plaintiffs' action against Diane Schafer alleged freedom from wilful and wanton misconduct on the part of the two Jung girls and wilful and wanton misconduct on the part of the defendant.

The jury was instructed that for the plaintiffs to recover they had the burden of proving, first, that at and immediately prior to the occurrence they were free from wilful and wanton misconduct and, second, that the defendant was guilty of wilful and wanton misconduct, and that such misconduct on the part of the defendant was the proximate cause of the injury and death. The jury was also instructed as to the provisions of the Illinois Guest Statute, c 95½, § 9–201, Ill Rev Stats, 1961.

The burden of proof is upon a plaintiff to allege and prove freedom from wilful and wanton misconduct contributing to the accident. Hatfield v. Noble, 41 Ill App2d 112, 119, 190 NE2d 391 (1963); Valentine v. England, 6 Ill App2d 275, 279–280, 127 NE2d 473 (1955); Lane v. Bobis, 340 Ill App 10, 12, 91 NE2d 106 (1950); Prater v. Buell, 336 Ill App 533, 536–537, 84 NE2d 676 (1949) and Willgeroth v. Maddox, 281 Ill App 480, 488 (1935). In the absence of proof the jury cannot be permitted to guess or conjecture on the question.

In this case, however, there is sufficient proof of plaintiffs' freedom from wilful and wanton misconduct to warrant the case going to the jury. First, there was proof that the two Jung girls were merely sitting in the front seat of the automobile. They were doing nothing unusual. Second, it is obvious that the situation of danger was apparent for at the most a few seconds before the collision and there was very little opportunity for the guests to warn the driver of any approaching danger. Third, the dangerous situation was obviously apparent to the driver and it was she who was in control of the vehicle. Fourth, there was testimony from Marjorie

Jung that someone in the car said that Diane should get back into the other lane but Diane responded that she couldn't and somebody said to slow down. Although Marjorie testified she did not know who made the warning statements, the jury might well believe from her testimony that they were made by the decedent, Janet, immediately before the accident. We, therefore, conclude that there was sufficient evidence of plaintiffs' freedom from contributory wilful and wanton misconduct to sustain the verdict and it is not necessary for us to consider the argument by the plaintiffs that defendant is estopped from raising the issue by any waiver of the defense.

■ The defendant also urges trial error in that the court did not instruct the jury on the statutory limits on recovery under the Injuries Act. The accident occurred in April of 1963 and the trial took place in November of 1965. On August 3, 1965, the Injuries Act, c 70, § 2, Ill Rev Stats, (1965) was amended to provide, inter alia:

> "In every such action, the jury shall determine the amount of damages to be recovered without regard to and with no special instruction as to the dollar limits on recovery imposed by this Section. In no event shall the judgment entered upon such verdict exceed $20,000 where such death occurred prior to July 14, 1955, and not exceeding $25,000 where such death occurred on or after July 14, 1955 and prior to July 8, 1957, and not exceeding $30,000 where such death occurs on or after July 8, 1957."

The provision of the statute as amended providing that the jury shall not be instructed as to the dollar limits on recovery is procedural in nature and under the Statute on Statutes, Ill Rev Stats, c 131, § 4, (1965), the 1965 Amendment is applicable to proceedings taking place after the effective date of the amendment.

In Nelson v. Miller, 11 Ill2d 378, 143 NE2d 673 (1957), the Supreme Court stated at pages 382 and 383:

"We consider first the defendant's contention that the new provisions of the statute cannot be applied to him because the cause of action arose before the effective date of the provisions authorizing extraterritorial service on non-resident defendants. Insofar as this claim is based on the Federal constitution it is without merit. Sections 16 and 17 do 'not extend either to destruction of an existing cause of action or to creation of a new liability for past events.' Cohen v. Beneficial Industrial Loan Corp, 337 US 541, 554 (1949); see also Ex parte Collett, 337 US 55, 71 (1949); cf. Federal Rules of Civil Procedure, Rule 86.

"Insofar as the claim is grounded in Illinois law it is fully disposed of by our recent decision in Ogdon v. Gianakos, 415 Ill 591, 597 (1953), where we said: 'The law applicable in the State of Illinois is that there is no vested right in any particular remedy or method of procedure, and that, while generally statutes will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, nevertheless, when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. (Chicago and Western Indiana Railroad Co. v. Guthrie, 192 Ill 579; Peoples Store of Roseland v. McKibbin, 379 Ill 148; Board of Education v. City of Chicago, 402 Ill 291.) This statute embodies no saving clause as to existing litigation. It merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment. As a change which

affects merely the law of procedure, there can be no valid objection to enforcing the existing cause of action under this new procedure.' See also Orlicki v. McCarthy, 4 Ill2d 342, 347–48 (1954)."

We also note that in the same paragraph of section 2 of the Injuries Act there is a reference to deaths occurring prior to July 14, 1955 and July 8, 1957. It is apparent that it was the intention of the legislature that the 1965 Amendment would apply to all trials taking place after the effective date of the amendment regardless of the date of death.

It is appellant's final contention that the $30,000 verdict in the death case is excessive and is not supported by the evidence.

The decedent was eighteen years of age at the time of her death. She had completed high school as an average student and she had also completed a beautician's course. She was residing at home and was employed making approximately $50 per week. She was kind and helpful toward her parents, her sisters and brother. There was testimony that she was disposed to be generous to her family.

In Maca v. Rock Island-Moline City Lines, Inc., 47 Ill App2d 31, 197 NE2d 463 (1964), the court affirmed a $30,000 award in a death case involving a seven-year-old boy. The award was made by the trial court sitting without a jury. The court stated at pages 37 and 38:

"Fixing the amount of damages is preeminently the function of the trier of the fact, and the amount so fixed will not be disturbed on appeal unless it is obviously the result of passion and prejudice (Alexander v. Lanterman, 39 Ill App2d 305, 312, 188 NE2d 351; Smith v. Ohio Oil Co., 10 Ill App 67, 78, 134 NE2d 526). The deceased child, Louis D. Maca, was a healthy child and so far as the record shows his entire life was ahead of him with all

397

the opportunities which that would imply. There was no evidence which would minimize a determination of pecuniary loss equal to the sum of $30,000 allowed by the Trial Court, and the least we could do on review is to accord the Trial Judge the same courtesy which is given to juries, of approving a finding as to damages which is not obviously the result of passion or prejudice."

■■ There is a presumption of a pecuniary loss in favor of the lineal heirs of the deceased in a wrongful death action arising from the relationship alone. The decedent's parents are, of course, lineal next of kin. See Ferraro v. Augustine, 45 Ill App2d 295, 196 NE2d 16 (1964). We cannot say that the damages awarded here are so excessive as to require our interference.

■ In addition we note that the surviving plaintiff, Marjorie, suffered a broken arm which was placed in a plaster cast for four or five weeks. She also sustained lacerations on the head requiring sutures. She was earning about $80 per week at the time of the accident and lost six weeks from her employment. Her medical expenses totaled $467.95. The verdict in her favor of $1,250 certainly did not reflect any prejudice on the part of the jury against the defendant.

It is, therefore, our conclusion that the judgments entered are proper and should be affirmed.

Judgment affirmed.

SEIDENFELD and ABRAHAMSON, JJ., concur.