BARBARA SMITH, ALSO KNOWN AS BARBARA HARRISON, APPELLANT, V. DELBERT D. SMITH, APPELLEE.

265 N. W. 2d 855

Filed May 17, 1978.   No. 41527.

Russell S. Daub, for appellant.

James M. Davis of Dolan, Dinsmore & Davis, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

The appellant, Barbara Smith Harrison, appellee Delbert D. Smith's divorced wife, appeals from an order enjoining her from taking any action to enforce her claim for child support and ordering her to pay appellee the sum of $1,101.31, which she had received from him as the result of garnishment orders. We reverse.

Appellant and appellee were divorced on May 23, 1952. No application was ever made to modify the divorce decree until the present action. The decree provided as follows: "The court further finds that as a result of said marriage one child has been born, namely, Susan Lynn Smith, now age fifteen (15) months, and that plaintiff is a fit and proper person to have the exclusive care, custody and control of said minor child, subject to visitation by the defendant at reasonable intervals.

"The court further finds that the defendant should pay to the plaintiff, or as she may direct, for the support and maintenance of said minor child at the rate of Five Dollars ($5.00) per each week for a period of six (6) months from the date of this decree, and thereafter at the rate of Ten Dollars ($10.00) per each week until said minor child becomes of legal

age or is emancipated by marriage or until the further order of this court."

Delbert's child support payments were made for approximately 9 months through his mother. At the direction of Barbara, they were paid to a babysitter. During this period of 9 months, Delbert made no attempt to see his daughter. At the time of the last payment, the babysitter advised Delbert's mother that the child was no longer with her and she did not know where the mother and child were living. The record is undisputed that Barbara lived in the Omaha area for approximately 5 years after the decree was entered. In 1957 she moved to Illinois, but returned to Omaha in 1959 where she lived until 1961. From 1961 until 1969, she lived out of the state. The minor child of the parties, Susan Lynn Smith, was married August 16, 1968.

Barbara testified she asked Delbert for money a couple of times and Delbert told her she had two choices: She could either take Susan and support her and take care of her because he never wanted to see her again, or he would take Susan away and she would never see her again. This happened after the divorce became final. One of these occasions occurred in a Brandeis store in Omaha. Delbert denies ever being asked for money.

Barbara further testified before she moved to Illinois she attempted to locate Delbert but could not do so. She called his father and he told her he had no idea where Delbert was. The testimony is undisputed that during a portion of this time Delbert had an unlisted telephone number.

Delbert made no attempt to locate Barbara or his daughter from the time of the divorce until the present action, although he knew where his former wife's sister could be reached in Omaha. Delbert admits he made no attempt to communicate with his daughter after 1952. He testified he had a telephone conversation with Barbara about 4 years after the

divorce, but she did not tell him at that time where she was living or make any demand on him for child support. The next time he heard from his wife was in 1963. At that time he took his daughter out to dinner. This was the only time he saw her after the divorce became final.

Defendant's motion to modify the decree prayed that the court modify the decree retroactively by terminating the child support payments which were due under the terms of said decree from the time when plaintiff denied defendant his right to reasonable visitation, from the time plaintiff removed said minor child from the state, or from the time said minor child was adopted by William R. Harrison, whichever was "soonest," and for all other relief the court deemed equitable.

The record does not indicate that Barbara denied Delbert any right of visitation except as that may be inferred from the fact that she did remove the child from the jurisdiction. This was done sometime in late 1957.

The record reflects that the adoption proceedings were never finalized. It does indicate, however, that on the 6th day of September 1957, the District Court gave its permission to Barbara Kathleen Harrison and William R. Harrison, her husband, for the adoption of Susan Lynn Smith. The consent recited that both Barbara and Delbert, the parents of said child, had given their written consent to said adoption. Barbara testified that because of the subsequent removal of the Harrisons from Nebraska, the adoption was never completed.

The trial court herein ordered Barbara to pay Delbert the sum of $1,101.31, which was the amount received by her as the result of garnishment orders during 1976. The court further directed the clerk of the District Court to pay all funds in his possession, being the proceeds of an additional garnishment, to Delbert. The court then permanently enjoined Bar-

bara from taking any action to enforce her claim for child support against the defendant, his wages, or his property, both real and personal. It further decreed that each party was to pay his own attorney and any costs incurred in the action. The court stated it entered this order in the exercise of its general powers of equity and, in reaching this decision, the court considered the particular equitable principles of "laches" and the "clean hands doctrine."

The rule is well established in this jurisdiction: "Where a divorce decree provides for the payment of stipulated sums monthly for the support of a minor child or children, contingent only upon a subsequent order of the court, such payments become vested in the payee as they accrue. The courts are without authority to reduce the amounts of such accrued payments." Ruehle v. Ruehle, 169 Neb. 23, 97 N. W. 2d 868 (1959).

The record is undisputed that the defendant, Delbert, made no attempt to see his daughter subsequent to the divorce. Whatever payments were made on the judgment, and there is no proof of exactly how much was paid, were paid through his mother. Delbert testified this was done for approximately 9 months. There is no statute of limitations involved. Under section 42-371, R. S. Supp., 1976, liens for child support are enforceable for a period of 10 years after the child becomes of age. Nor does it appear that plaintiff's claim is barred by laches. Laches does not result from the mere lapse of time but from the fact that during the lapse of time changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is allowed to be enforced. Campbell v. Kirby, 195 Neb. 610, 239 N. W. 2d 792 (1976).

"Where the obligation is clear and its essential character has not been changed by lapse of time, equity will enforce a claim of long standing as

readily as one of recent origin, especially between the immediate parties to the litigation." Lammers v. Lammers, 193 Neb. 836, 229 N. W. 2d 555 (1975).

"The defense of laches prevails only when it has become inequitable to enforce the claimant's right, and it is not available to one who has caused or contributed to the cause of delay or to one who has had it within his power to terminate the action." Finnern v. Bruner, 167 Neb. 281, 92 N. W. 2d 785 (1958).

The defense of laches is not available to defendant. He is not without fault herein. It is evident he had very little interest in visitations with his daughter. From the time of the divorce he made no effort to see her until the decree became final and the occasion when this was done is not described in the record. Any payments made were made through his mother. The child and her mother remained in the jurisdiction at least into September of 1957. Defendant, who was a civilian employee of the police department, made no attempt to locate them, although he readily could have done so. Further, if defendant was worrying about visitations, it would have been an easy matter for him to have applied to the District Court for relief.

A different question is presented, however, by the order of the District Court consenting to the adoption of Susan Lynn, the minor child, by William R. Harrison, the then husband of Barbara Smith Harrison. While the record indicates the adoption was not completed, it was pending in the county court of Douglas County at the time the District Court gave its consent. Shortly thereafter, Susan Lynn Smith left the jurisdiction with her mother and her mother's husband, William R. Harrison, who is since deceased.

Delbert had given written consent to the adoption. He had every reason to believe it would be completed and that William R. Harrison, his former wife's then husband, would assume custody and support of Susan Lynn. Delbert should have followed

through to be certain the adoption proceedings were finalized, or should have had an order entered terminating all future child support payments from and after the consent to the adoption. He did not do so but assumed it had been done and pleaded the adoption as a defense herein.

We are met with the rule this court is without authority to reduce the amounts of accrued child support payments. We continue to adhere to that rule unless equitable estoppel is present. Here we find that Barbara, by securing the written consent of Delbert to the adoption of Susan Lynn by her then husband, William R. Harrison, has equitably estopped herself, with the result that she has waived her right to further child support payments from and after the time the adoption should have been completed.

William R. Harrison was in the military service. He left the Omaha area when he was transferred to another base in the latter part of 1957. The record does not indicate that any allowance was received by him for the child from the federal government, because that matter was not covered in any way in the hearing. It is reasonable to assume, however, that this was the purpose of the adoption proceedings, and this result may have been achieved by the consent of the District Court to an adoption.

William R. Harrison died in 1959, at which time Barbara returned to the Omaha area with Susan. While Barbara was married to Harrison, Susan did use the Harrison name. In all equity and fairness, Delbert should have been relieved from child support payments from the time that an adoption proceeding could have been finalized. For the purpose of this decision, we assume that could have been accomplished during the remaining part of 1957, and determine that all child support payments should have terminated as of January 1, 1958.

The application of a doctrine of equitable estoppel

herein may seem to be a departure from the rule heretofore enunciated in Ruehle v. Ruehle, *supra*. That, however, is not the case. The divorce court, upon the petition of the mother and her then husband, gave its consent to the adoption. It made a specific finding that the father of the child had given his written consent to the adoption by the then husband of the mother. A further order should have been entered terminating future installments of child support. While the adoption proceedings pending in the county court were not thereafter completed, Delbert was not aware this had not been done. He had every reason to expect they would be completed in a normal manner and that he would have no further responsibility for the support of his child.

This court does not have authority to reduce past-due installments of child support. This is not to say, however, that it may not find in a proper case that a party has equitably estopped herself from collecting installments accruing after some affirmative action which would ordinarily terminate future installments. The securing of the consent of the father to an adoption by another of his child is such action which by its nature should terminate further liability for child support.

The courts of other jurisdictions are not in agreement as to whether a consent to an adoption will terminate future child support installments if the adoption is not completed. We believe strong equitable considerations support those cases holding it should do so. See, Rodgers v. Rodgers, 505 S. W. 2d 138 (Mo. App., 1974); Anderson v. Anderson, 63 Ill. App. 2d 358, 211 N. E. 2d 492 (1965); Larsen v. Larsen, 9 Utah 2d 160, 340 P. 2d 421 (1959). See, also, Schofield v. Schofield, 260 Iowa 565, 149 N. W. 2d 810 (1967).

We said in Breslow v. City of Ralston, 197 Neb. 346, 249 N. W. 2d 205 (1977): "Equitable estoppel is

based upon grounds of public policy and good faith and is interposed to prevent injustice and inequitable consequences. Ordinarily, there must be a reliance in good faith upon statements or conduct of the party to be estopped and a change of position by the party claiming the estoppel to his injury, detriment, or prejudice.''

''A party is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith relied thereon.'' Pester v. American Family Mut. Ins. Co., 186 Neb. 793, 186 N. W. 2d 711 (1971).

We reverse the judgment of the trial court in all particulars. We have some difficulty in understanding why this unpaid child support judgment was not called to the defendant's attention long before the present action. We make this observation because the record indicates defendant acquired real property during this period. The abstract of the property, if one were brought down to date, should have indicated the existence of the judgment lien.

In any event, we find that plaintiff, Barbara Smith Harrison, has a valid and subsisting judgment lien from and after May 23, 1952, but we terminate her right to collect child support payments from and after January 1, 1958. We remand this cause with directions to determine the amount due Barbara Smith Harrison on said judgment, with interest at the legal rate on the unpaid installments as each accrued, from and after May 23, 1952, until paid. We further direct that no credits be allowed to Delbert Smith for any payments made unless and until the exact amount of said payments are proved. The amount realized by the plaintiff through garnishment proceedings should be applied on said judgment.

The judgment is reversed and the cause is re-

manded to the District Court for further proceedings in accordance with this opinion. All costs are taxed to the defendant.

REVERSED AND REMANDED.